Jones, Judge:
On October 26, 1965, the claimant, Cavanaugh Landscaping Company of Akron, Ohio, entered into a written contract with the respondent, Department of Natural Resources, to construct four golf courses at West Virginia State Parks, two at Pipestem State Park, in Summers County, one at Twin Falls State Park, in Wyoming County, and one at Canaan Valley State Park, in Tucker County, for the contract sum of $710,000.00 One paragraph of the contract provides the following: “The Contractor hereby agrees to commence work under this contract on or before a date to be specified in a written ‘Notice to Proceed’ of the owner and to fully complete the project by October 14, 1966, as stipulated in the specifications. The Contractor further agrees to pay, as liquidated damages, the sum of $100.00 for each successive calendar day thereafter as provided in Paragraph 19 of the General Conditions.” The contract further provides that no changes in the work shall be made without the written approval of the Owner, charges or credits to be determined by specified methods, and the claimant was emphatically warned that no additional costs could be paid for without a Change Order. The State of West Virginia issued a Purchase Order dated October 30, 1965, acknowledging acceptance of the claimant’s proposal dated September 27, 1965 showing the deletion of several Alternates and a base contract price of $710,000.00. The Notice to Proceed was given on January 28, 1966. Sundry change orders increased the total contract price to $762,399.80, and extended the contract time from October 15, 1966, to June 1, 1968.
*201 The claimant contends that it is entitled to damages under the well established rule of law that a contractor is entitled to damages for delay caused by the owner, and also for damages for extra work done. Items of this claim as identified in the claimant’s petition are as follows: 2 (b) Delay in giving notice to proceed, including $11,564.00 not alleged in the claimant’s petition but permitted by the Court to be shown under an amendment of the pleadings at the time of hearing, $53,172.20; 2 (c) Delay resulting from faulty design and changes recommended by a “Citizens Committee” appointed by the governor, $20,750.00; 2 (d) Delay of the Department in furnishing mowing equipment, $42,715.00; 2 (e) Failure of the Department to furnish adequate water, $1,155.00; 2 (f) Damage to sprinkler heads, $1,295.00; 2 (g) Failure of the Department to provide adequate drainage, $16,430.00; 2 (h) Erroneous staking of courses, $24,255.00; 2 (i) Damages caused by heavy rains and delay relating to automatic water systems, $53,662.50; 2 (j) Delay due to traffic over public roads through two courses, $6,400.00; 2 (k) Delay caused by Farmer Mallow, who refused to vacate condemned land at Canaan Valley and threatened harm to the claimant’s officers and employees, $5,952.00; 2 (1) Failure of the Department to provide an adequate water supply at the Pipestem Nine Hole Course, $1,245.00 ; 2 (m) Delay in location of a practice fairway at Pipestem Nine Hole Course, $1,720.00; and 2 (n) General delays causing injury to claimant’s financial position and hindrance to its business as a going concern, $350,000.00; a total of $578,751.70.
The Department of Natural Resources denies that it owes the claimant anything and contends that any losses which the claimant may have sustained were due to the claimant’s own fault.
The State had no right to delay the Notice to Proceed indefinitely, for example, to the day before the completion date of the contract as suggested by counsel for the claimant, and if the delay was unreasonable, claimant would have been entitled to an extension of time. The claimant made much of its concern about the $100.00 per day penalty after the completion date, but the record does not disclose that it ever requested an extension, and, in fact, it appears that the eventual change order extending the time was initiated by the respondent. The clai *202 mant was put on notice at the outset that the contract must be approved by the Community Facilities Administration, a federal agency which was to furnish matching funds for the project, and that there were other preliminary matters which had to be consummated before work could be started. The claimant was told that if it performed any work prior to the Notice to Proceed, “It’s on your own.” During the latter part of November and early December, 1965, the claimant did send skeleton work forces to the several State Parks, being supervisory personnel who had no other work to do and apparently were making preparations for the following Spring. The severe Winter weather made work on the project practically impossible. The The Community Facilities Administration approved the project on January 12, 1966, whereupon the Attorney General’s approval was obtained and other necessary requirements were completed, and the Notice to Proceed was issued on January 28, 1966. Contrary to the claimant’s contentions, it was able to submit a work schedule dated February 22, 1966 showing that all work would be completed within the term of the contract. Under date of March 17, 1966, Daniel Cavanaugh, President of the claimant company wrote to the associate Architect/Engineer, Irving Bowman and Associates, in part as follows: “In answer to your letter of March 11, 1966, we wish to advise you that there has been no construction delays and we expect to finish on the specified date.” Cavanaugh testified that this letter was written under coercion and fear of retaliation, but'there is no corroboration of such averment, and in another letter written by him to Irving Bowman and Associates on May 10, 1966, he said: “We have had our normal share of problems so far and we have not been too concerned, but if you are not going to approve any more payments for Pipe Stem 18, we will have to stop all work there and request additional money for hold up.” The claimant undoubtedly had problems during the period involved in Item 2 (b), but all of them should have been anticipated and were substantially “normal” problems as indicated by Cavanaugh in his letter of May 10, 1966. The claimant accepted the Notice to Proceed and undertook performance of the contract, without making any request for additional compensation or a change order. We are of opinion that there was no unreasonable delay on the part of the respondent; *203 and the damages claimed for this period in the total amount of $53,172.20 are clearly not supported by the evidence.
The Citizens Committee appointed by the Governor began its investigation in the latter part of December, 1965. They made several recommendations for changes in design at Pipestem. Work was suspended at Pipestem by an order of the Department from March 25, 1966 through May 23, 1966. According to the claimant’s testimony, extra costs in the amount of $20,750.00, resulting from design changes in pursuance of recommendations of the Citizens’ Committee, occurred in the months of July, August, September and October, 1966. The incongruity of the dates is not explained. By the letter of May 10, 1966, heretofore referred to, the claimant complained that it had not been paid $20,000.00 for work performed at Pipestem during the work stoppage period, and warned that if estimates were not paid, all work at Pipestem would have to stop and damages would be requested. In less than two weeks from the date of that letter, the order 'was given to resume work. Some of the recommended changes in design were made, but there is no clear showing that the claimant was damaged thereby. There is testimony to the effect that additional work was done, including additional grading, but no diary was kept, no payrolls specifically attributed to extra work, no measurements of dirt moved, and change orders were not requested. This was the only suspension of work ever ordered by the Department and it applied only to Pipestem, not to the other two State Parks. At least to some extent it appears that the Citizens Committee was more help than hindrance to the claimant, and the effort toward changing some of the design appears to have been a cooperative one. The Court is of opinion that the evidence adduced on behalf of the claimant is not sufficient to sustain the allegations of Item 2 (c).
Items 2 (b) and 2 (c) discussed above are typical of the remaining items of this claim. Items 2 (d), 2 (i), 2 (j), 2 (k), 2 (m) and' 2 (n) all involve alleged delay as the proximate cause of increased costs. The evidence, and frequently the lack of it, indicates that inclement weather and the claimant’s own failures substantially contributed to the claimant’s discomfort, inconvenience and financial loss.
*204 The claimant suffered inconvenience and some delay due to the recalcitrance of Farmer Mallow. However, the State had obtained the right of entry upon the Mallow land, as required by the contract, and upon notice of Mallow’s threats and interference, an attorney was promptly employed by the State, an injunction was obtained in the Circuit Court of Tucker County, and the molestation ceased. The contract provides that the Owner shall not be responsible for any delay in furnishing the right of way, but in case such delay retards operations, the Owner shall grant an extension of time. No extra compensation or extension of time was then requested by the claimant.
Items 2 (e), 2 (f) ,2 (g), 2 (h) and 2 (1) involve claims of additional work and expense which, under the contract, could not be paid for without the prior approval of the Department and a written change order. This work was done without change orders, and without proof of extra work or demand for extra compensation.
Item 2 (g) complains of the failure of the Department to furnish adequate drainage. The contract did not require the State to provide drainage, but when during the course of the work it became apparent that certain drainage was necessary, a change order was requested and provision for drainage costing $27,399.80 was granted.
The fact that the claimant was unable to obtain copper wire at the time it was needed for the installation of the automatic draining system at Twin Falls and the resultant damage in the claimed amount of $42,000.00 cannot be attributed to any fault of the Department of Natural Resources. This alternate was clearly a part of the base contract and the responsibility for having to dig the ditch twice was a combination of a scarcity of copper wire, weather and bad judgment. The claimant did no more than it was required to do under the contract.
Damages to the claimant’s business and the loss of future profits claimed in Item 2 (n) are too remote and speculative to deserve serious consideration by the Court.
Obviously, this was not a happy or profitable experience for the claimant. The Court recognizes that the claimant sustained losses, some due to its own fault such as having to dig a ditch twice at an additional cost of $42,000.00, some as the result of *205 bad weather and perhaps some losses which may have been contributed to by the State, but not a single such item is examined, evaluated, described and explained so that the Court can say that for this period and for this cost of labor and equipment the claimant has been damaged in an amount certain by reason of delay or other act or omission of the State.
The Court is of opinion that the claimant has not proved its case by a preponderance of the evidence, and, accordingly, this claim is disallowed.